May it please the court, my name is Russell Pritchett and I'm the attorney for the petitioner Mr. Hernandez and I would like to reserve three minutes of my time for rebuttal. The main issue in this case is whether the immigration judge sufficiently weighed the probative value of hearsay testimony admitted and whether the BIA improperly stepped in to weigh that evidence and under regulation the BIA is expressly forbidden to engage in denoble fact finding. In this case the IJ heard the testimony of Mr. Hernandez's former employer in Guatemala as well as admitting into evidence a number of which was admittedly hearsay in the employer's evidence and the affidavits was that the father of Mr. Hernandez was assassinated by the National Police as a result of denouncing electoral fraud. Well let's be precise he was certainly killed and killed by someone yes but I don't know that I saw any evidence that specified a factual basis or an observation any direct evidence with regard to who committed the crime there are certainly inferences offered up but I don't know that there's anything more than that. Well your honor there are direct statements which are hearsay that's not in dispute those are hearsay statements both from Mr. Sosa the employer and a number of respected people in the community that the National Police were responsible for this one of them indicated. Based on what what's the source of the knowledge none of the declarations or affidavits I looked at purported to have direct knowledge. I believe that's true I think it is hearsay. Not simply hearsay that it is in the form of a declaration it is surmise on the part of the witness but only surmise it's not like somebody said I saw this happen what they said is he was killed I think it must have been the police. Well they didn't say he was killed I think it must be he said he was killed it was the else. Well I guess my worry about your argument you're making now is that I read from what the AJ said at AR 58 or the IJ sorry he said there is no basis to support the opinion that it was the corrupt police who supposedly were responsible for the death of the father it's simply the supposition on the part of P or of the petitioner and perhaps others in the community so it seems to me that the BIA did not engage in improper fact-finding when the IJ made a direct decision about that and all they did was confirm that decision. Well your honor with respect I think a decision such as a Zahidi the INS which is in my that for documents documents that have been admitted into evidence to be rejected there must be specific. Well however what I'm doing I don't want you to go back to the documents because here we have a direct IJ finding there is no basis and all they did was confirm or deny the basis so I'm worried that you're on the wrong motive if you're really on or on the wrong position or issue if you're really on improper fact-finding because if the IJ finds it they have a chance then to comment. Well your honor I believe that these affidavits and Mr. Sosa's testimony have to be accepted as credible because there's no contrary finding. But we don't have to accept supposition as credible we don't have to accept somebody else's inferences we have to accept facts but not more than that and I don't see facts here anyplace that demonstrate who was responsible for the killing. I see inferences or surmises or supposition we're not bound to accept those are we? Your honor I think the the weighing of that those for the immigration judge. And the immigration judge weighted as Judge Smith just read to you to say that it was only supposition and that's not good enough. I suppose the question there is how clear he has to be that he's considered and weighed that evidence. I think there's a heady decision tends to militate otherwise. Well what stop just look at the sentence that Judge Smith just read to you. What in that sentence suggests that the IJ wasn't aware of and referenced the the very evidence you're talking about. I mean the only source of that statement must have been it is simply the supposition on the part of this respondent perhaps others in the community. To me that seems to be a clear reference to exactly the evidence you're talking about because otherwise he wouldn't know about others in the community. Well your honor I believe that the BIA did give their own specific and cogent reasons. I think that's the level of analysis which should be required in handling hearsay evidence. If there's case law such as the GU decision that it cannot be rejected just out of hand. I think that there's a heady decision. What suggests that it was rejected out of hand by anybody? Well I think because it was hearsay because it came in the form of See there are two different problems with this evidence. I think you're commingling. One is that nobody testified directly. It was all by affidavit. And the other is that the persons who testified via affidavit did not testify from personal knowledge but rather offered up their suppositions. Now to say for the finder of fact to say that look that's just supposition. I'm not bound to accept that. I'm not persuaded by it doesn't mean that the hearsay objection precluded consideration of the declaration. They do consider it and they decide it's not persuasive because it's simply supposition. It's not direct evidence based on personal knowledge. Your Honor I think my point here is I understand your point. I think my point here is that I believe that under the Zahedi decision that a more a little more meat needs to be given in an analysis before rejecting the hearsay such as the BIA gave. And the IJ if he considered this in have decided the way the BIA did which I think is reasonable. But the other point they didn't get to that perhaps could have swayed this case was the country reports. There is a reference in the IJ decision that he looked at some State Department document but the BIA never referred to the country reports. And I believe the law of this circuit is that in a case of this type that it's that they they are required to analyze the country reports. What do you do with the IJ's if you will statement in his own opinion about that where he said it was his obligation to consider all the materials offered? I believe that in the Aguilar-Ramos case which is cited in my brief that there has to be a specific consideration of the country reports in an asylum case of this kind. And that was certainly not done on the BIA level which is under review here. What the IJ said is one thing but we're this court is reviewing the BIA decision which is devoid of any consideration of the country. And that is because and that is because in your mind the BIA made its own determination and did not rely on the IJ decision? No, I believe the BIA did. I believe yes they did make their own determination. The BIA did. And I think the country reports did have a lot of corroborative information that should have been analyzed about the fact that police are engaged in exactly this kind of corruption in Guatemala. I know that I just have about two minutes left so if I may retire. It's yours and we'll hear from the government. May it please the court, this is Ari Nazaroff again I'm from the Office of Crystal Ball to what would happen if petitioner was removed to his home country is found on page 110 of the record. And that is the fact that he went to report this crime to the state peace tribunal with his mother and his siblings. Since then they've not been harmed, they've not been threatened, and they continue residing in the same residence. That seriously undermines his asylum claim and asylum is supposed to protect someone from going back and being persecuted, being hurt. And these individuals are in a similarly situated did the exact same thing that he did. Let me ask you a question, is there anything in the BIA opinion that suggests they ever looked at the whistleblowing theory? I think that... What's the best language you have because I couldn't find any. Well I think on its face such an argument would not be plausible. There's no connection between the father and the son. The son did accompany his father to the events but... Well that's a good argument but again what do I have in the BIA decision which would suggest that it was even talking about the whistleblowing theory? Well I also don't see the word whistleblowing in the board decision but any remand along those lines would be futile because it's not plausible. The case is about... Well but just a minute, do you know of any authority for the proposition that if the BIA didn't consider the whistleblowing claim that we shouldn't remand to see if there's prejudice? Well no your honor but again... It seems to me that if they don't consider the theory we must remand to determine whether there's any prejudice then. Not if it's not plausible your honor. In this case it's just not plausible. This case is about establishing a connection between the alleged political murder of his father alleged and the presentation that Hernandez suffered on account of his father's political... Aren't we in that analysis re-weighing and considering evidence which we should not do? Well your honor you are not re-weighing because the the decision itself is so strong and any kind of whistleblowing argument is so not plausible that on its face it fails. It just fails. There's just no evidence at all in this case that... Go ahead I don't mean to interrupt you. Go ahead. I'm sorry your honor, go ahead. I mean I guess that's my worry with the reports and I find the same thing happening. Well the IGA did consider country reports and... How did he consider them? Where did he consider them? On page 50. I mean the best I could find it was his obligation to consider all materials. Which would include the country reports. Well I understand but he didn't say anything about them. Well also in our brief we cited to Namibaldi where the evidence. I understand that but country reports are special weight accorded to them in removal proceedings. That's what Aguiar Ramos says. Special weight. And so it seems to me that at least an IJ if he's gonna talk about country reports he ought not just say well I looked at everything when they had special weight which was to be accorded to them. Well I think that IJ said specifically that I take note of all the background materials. I recognize my obligation to consider all of the materials and the country reports don't help at all petitioner's case. Because... Would you agree that country reports are highly probative evidence? Usually the best source of information on the conditions in foreign nations. I know that this court has said that. That's true but not... Well I'm not talking about this court. I'm talking about the BIA in matter of HLH and ZYZ. But the IJ and the board did consider the country reports. I agree with that statement your honor. They did consider it but they didn't really haven't... If I am not convinced they consider it don't I need to remand? If they're central to the decision if there's a if the remand would not be futile yes but in this case they did consider it your honor. The evidence the other side has not shown any compelling evidence that they have not considered. And under this court's case law the agency does not have to list every piece of evidence and then a remand would happen in every case. They just have to explain the basis upon which they made their decision. I can understand your argument in some instances but I'm really tough on that argument or a little skeptical at least of that weight. It doesn't seem to me that one would just say oh I looked at everything. Well again the country report in this decision in this case would not compel a different different decision. They would not there's... Well I understand your argument but that really isn't for me to decide. That's my worry. Well again your honor it is our position that the IJ did consider them that the board considering this court has said that it doesn't have to it doesn't have to as we stated in our brief it does not have to address every piece of evidence just that it considered issues raised and issued this decision in terms sufficient to enable a review in court to perceive that it had heard and thought not merely reacted and that's what that's what happened in this case. The country reports don't change the fact don't compel the change that Mr. Hernandez has not shown any compelling evidence that the harm he suffered was on account of his political opinion or otherwise protected ground. If you look at the country reports they talk about political groups but which political groups would apply to Petitioner? He said he was not politically involved he had no interest during the hearing in in political political activities. Who killed his father? We don't know your honor. Well we have supposition from several witnesses and we have country reports that say the National Police engage in killing but is that a basis for the certainly a basis for the petitioner to make the argument it couldn't that be the basis for a conclusion by the finder fact that in fact his father was killed by the National Police. Well I think in this case it can't because that and it's curious your honor that the only witness to the father's murder was his brother who was also in the United States never submitted an affidavit never submitted any kind of evidence was not called into court and even though this case was years in the process and on page 102 Petitioner conceded that his uncle told him it was some unknown strange man. How did his uncle get admission to this country? Do we know? I'm sorry your honor I don't know again the uncle never appeared he never submitted any kind of statement. I think asylum is meant to protect individuals from going back and getting hurt harmed in their home countries and the crystal ball as to what would happen with Petitioner it's what's happening to his relatives and they are not harmed they haven't been harmed they haven't been threatened they live in the same house and that undermines Petitioner's claim. This court has no further questions the government rests. Thank you. Rebuttal. Thank you I would like to point out that Mr. Hernandez is not similarly situated to the rest of his family and that there is actually a basis in the record for the that differentiates him from the family and that's on page 87 of the record and the evidence there is that his father went to protest the electrophorons to the courts and that although Mr. Hernandez was only 15 years old he went with him and then he waited outside. So how would he be identified by the authorities as a whistleblower? Well he accompanied his father to make the the protest. He went to I take Guatemala so it or wherever he went to to make the report but his father went in to make the report and he stayed outside so there's no indication at all or any reason to believe that anybody knew that he was even involved in the trip. Well to the extent they knew his father was involved presumably the people who killed him weren't in the courtroom but to the extent they knew his father wasn't went to the courts they probably knew the son went with him. Why? I don't understand any basis for that inference. I mean I may have traveled to Seattle with somebody that somebody's not in the room how would anybody know that somebody's with me? Well and he and he did certainly take the front line in complaining about corruption in his father's death. That's when you get to the other issue. Does that really distinguish him from the other members of his family who accompanied him to make that complaint? I think in the sense that he he said in the record that he was the lead he was in the head of the family so it was his duty to go. I think that does distinguish him. And with regard to the country reports I believe yes the evidence there would have given a judge an analysis the basis to show at least circumstantially which is sufficient evidence what a motivation was here for for these crimes. And so I would ask the court to to send this case back so the immigration judge can fully consider these questions and he may come to the same conclusion but I think there should be a sufficient record for that to be analyzed on appeal. Thank you. Thank you. I misspoke before in the last case but are you it was in your case that the BIA reversed the decision to allow a No we we had requested that voluntary departure not be granted because there's some negatives that come with that now that that we did not want. It's a two-edged sword. It is. You don't want the other edge. Right. And do you know why his uncle is how his uncle got into this country? This is not in the record but I I understand from the client that they fled separately at different times different ways that the uncle came unlawfully and that they were separated and that the reason we didn't have the uncle for witness is the uncle his whereabouts in the United States were not known by the. So we don't know that what I'm concerned about is I've seen cases where there have been totally inconsistent rulings made with respect to different relatives raising the same claim. We don't know that the uncle is even lawfully in this country or you don't know. I I. You don't know that he's been granted asylum. Nothing in the record your honor but my understanding is that he came the same way as Mr. Hernandez but at a different time in a different place and did not enter the country legally. Thank you very much. Thank you. Thank both counsel for the argument. Case argued is submitted.
judges: Clifton, Nr Smith, Cjj Korman (Edny), Dj